UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**ALISSA CAWOOD**                                                                                                      **PLAINTIFF**

v.                                        **CASE NO. 5:22-CV-05225-TLB**

**SPRINGDALE SCHOOL DISTRICT;**
**MARK OESTERLE, Individually,**
**and in his Official Capacity as Assistant Principal; and**
**JOSEPH ROLLINS, Individually,**
**and in his Official Capacity as Principal**                                                                  **DEFENDANTS**

**COMPLAINT**

COMES NOW, Plaintiff Alissa Cawood, by and through her undersigned counsel, states and alleges as follows:

**PARTIES, JURISDICTION & VENUE**

1. At all times relevant herein, Alissa Cawood was a resident of the State of Arkansas, residing in Springdale, Washington County, Arkansas.

2. Defendant Springdale School District is an Arkansas Public School District located in Washington and Benton Counties in Arkansas. It can be served with process through its superintendent, Dr. Jared Cleveland. Springdale School District, including the School of Innovation, is an educational institution as defined in 20 U.S.C. § 1681(c).

3. Springdale School District is a recipient of federal educational funds.

4. Upon information and belief, Separate Defendant Mark Oesterle is a resident of Fayetteville, Washington County, Arkansas.

5. At all times relevant herein, Mark Oesterle was acting as Assistant Principal on behalf of Springdale School District.

6. Upon information and belief, Separate Defendant Joesph Rollins is a resident of Springdale, Arkansas.

7. At all times relevant herein, Joseph Rollins was acting as Principal on behalf of Springdale School District.

8. This Court has subject matter jurisdiction over Plaintiff's claims because they involve questions arising under federal law, including 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88 ("Title IX").

9. This Court has personal jurisdiction over Defendants because the actions giving rise to Plaintiff's lawsuit occurred in Washington County, Arkansas.

10. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

11. This action arises from the sexual harassment, sexual assault, and deprivation of bodily integrity suffered by a young student at the hands of Defendants.

## FACTUAL ALLEGATIONS

12. In 2014, Springdale School District hired Mark Oesterle as an assistant principal, first at Har-Ber High School and then at the School of Innovation ("SOI"), a Springdale public high school. As an assistant principal, Oesterle was acting as an employee and agent of the Springdale School District at all relevant times.

13. At all times relevant, Plaintiff Alissa Cawood was a student at SOI and/or Har-Ber High School.

14. During Alissa's time at SOI, Oesterle engaged in grooming behavior toward Alissa, culminating in a pattern of sexual harassment, molestations, sexual assaults, and violations of bodily integrity.

15. In August 2015, when Alissa was an eighth grader at SOI and Oesterle was employed as assistant principal, Oesterle took an interest in the thirteen-year-old. While on school grounds, Oesterle asked Alissa for her phone number and began to message her privately via text and over social media. Oesterle talked to Alissa about his private life and issues in his marriage, divulging explicit information regarding his extramarital affairs. Oesterle's inappropriate interest in Alissa was blatant and obvious to the Springdale School District, its officials, Principal Rollins, SOI teachers and staff, and to other students.

16. Oesterle began picking Alissa up from school, taking her off campus to eat lunch, and taking her home from school. Oesterle was not given permission by Alissa's grandparents (her legal guardians) to transport her, nor did they authorize Oesterle to remove Alissa from school grounds during the school day. Oesterle also began showing up to Alissa's home, often when her grandparents were not there, and offering to give her rides. Despite possessing direct knowledge of this inappropriate activity, the Springdale School District, Principal Rollins, and other district officials and agents chose not to stop the inappropriate activity or provide warning to Alissa's grandparents.

17. During the summer of 2016, when Alissa was between her eighth- and ninth-grade years of school and only 14 years old, Oesterle's communications to Alissa began to take on a more sexual nature. He made innuendos, offered to send her photos of his genitalia, made sexual comments about her appearance, and attempted to engage in other inappropriate verbal assault. After seeing a photo of Alissa wearing a dress, he stated that he wanted to take her to a club with him to show her off. During this time, Oesterle's unwanted sexual contact with Alissa also became more physically aggressive. On at least thirty (30) separate occasions, he groped her breasts or her buttocks, including at least fifteen (15) instances on SOI's campus. Several times Oesterle

also groped Alissa's buttocks while on SOI school grounds. Oesterle would eventually plead guilty to groping Alissa for sexual gratification during his employment with SOI. Oesterle's sexual molestations of Alissa on Springdale School District grounds was plainly visible, blatant, and obvious to onlookers, including the Springdale School District, its officials, Principal Rollins, SOI teachers and staff, and to other students. However, no action was taken to protect Alissa or other students in any way. In choosing not to restrict Oesterle's behavior or punish him, the Springdale School District and its officials, including Principal Rollins, ratified his behavior. This inaction by the district and its officials amounted to policy that gave Oesterle the confidence that he could continue to act with impunity and could continue to sexually harass and molest Alissa and deprive her of her constitutional rights to bodily integrity and to an equal education.

18. During this same timeframe, Alissa's grandparents discovered Oesterle's disturbing, yet blatant, pattern of behavior and actions towards Alissa. Alissa's grandfather, Gary Cawood, called SOI to complain. He spoke to Principal Joseph Rollins and informed him that Oesterle was showing up to their home when they were not present and regularly transporting Alissa in his vehicle without their permission. Mr. Cawood expressed that he believed Oesterle's behavior towards Alissa to be inappropriate and that it was clear Oesterle was treating her differently than other students because she was a girl. He told Principal Rollins that the situation "didn't look good" and that Oesterle's behavior was "not normal." Mr. Cawood conveyed to Principal Rollins that Oesterle's behavior suggested a sexual interest in his granddaughter. Principal Rollins said that Oesterle's behavior was "not right" and that he would look into the situation, but that Oesterle would be transferring school districts soon and would "be Fayetteville's problem."

19. Principal Rollins took no action to investigate the situation or limit Oesterle's access to Alissa or other vulnerable students during the remainder of his employment at SOI. Though he admittedly understood that the situation was "not right," he ultimately disregarded any concerns for Alissa's safety.

20. Largely unbeknownst to Alissa's grandparents, Oesterle also began to follow Alissa during this time, showing up unprompted at her home. In the subsequent year, he would also begin showing up at her after-school job. He stalked Alissa's social media accounts and those of her classmates to determine whereabouts and would make unprompted visits to speak with or observe her. Oesterle would sometimes even bring along at least one of his four (4) young children to meet or spend time with Alissa. Alissa began to avoid posting photos of herself on social media for fear that Oesterle would appear at her location. She developed a habit of only posting photos after she had left the location in the photo, finding that if her location could be discerned from the picture, Oesterle would often show up uninvited. Again, Oesterle's behavior was blatant and obvious to the Springdale School District, its officials, Principal Rollins, SOI teachers and staff, and to other students.

21. Throughout Oesterle's employment at SOI, several staff members, including Tim Smithy and Debbie Huston, reported to Principal Rollins and other SOI officials that Oesterle was engaging in inappropriate conduct with students and expressed concern that he could be grooming, molesting, and/or raping vulnerable students. Despite the number of concerns that were lodged, no action was taken by the Springdale School District against Oesterle and no steps were taken to protect Alissa and other students from this known danger. Alissa was one of several young victims targeted by the assistant principal during his employment with Springdale School District.

22. In late 2016, Oesterle chose to transfer to Fayetteville School District but continued his sexual harassment and abuse of Alissa. The grooming behavior he had been permitted to engage in by the Springdale School District during his employment emboldened him to become more graphic and explicit in his communications to Alissa and to continue his sexual assaults.

23. In early 2017, Alissa spoke to her lacrosse coach, Warren Ustler, a Springdale School District employee, about the unwarranted and inappropriate attention Oesterle was paying to her. Ustler stated that he knew Oesterle was behaving inappropriately toward numerous female students and had himself witnessed "uncomfortable" interactions with underage students and displays of sexually suggestive inappropriate behavior by Oesterle during his employment with SOI. Despite this, the Springdale School District still failed to take action to protect Alissa or other vulnerable students.

24. On May 2, 2017, during Alissa's ninth-grade school year, she posted a photo of herself in Oesterle's vehicle, as he was still picking up Alissa at various times and in various locations, against the express instructions given by her grandparents to Springdale schools, further evidence the District implemented a policy of inaction in the face of explicit warnings. *See Photo Posted on May 2, 2017*, attached and incorporated herein as **Exhibit "A."** A teacher sent the photo to then-assistant superintendent, Jared Cleveland, reporting that Oesterle was engaging in inappropriate behavior of a clearly sexual or romantic nature with female students. Superintendent Cleveland communicated the concern to Principal Rollins. The following day, Alissa was removed from class and ordered to report to the principal's office. Once there, Rollins informed her that faculty had expressed concerns about her relationship with Oesterle. Specifically, Rollins informed Alissa that teachers were concerned that Oesterle was displaying an obvious sexual interest in her and that they were concerned he might be sexually abusing her. Rollins conducted

this discussion with Alissa behind closed doors without a parent or counselor or anyone else present. Shockingly, Principal Rollins, and the Springdale School District, chose to hide these very serious concerns from Alissa's grandparents, who were provided no notification whatsoever that school officials suspected she could be the victim of sexual assault. Alissa's grandparents were given no notice of this event, either before or after.

25. Principal Rollins, alone in his office with Alissa with no parents, counselors or even a female teacher present, framed the faculty's concerns to Alissa as something he did not take seriously, beginning by telling her that "he knew nothing was going on," but that he needed Alissa, a child, to write a statement to that effect. Principal Rollins' dismissive attitude about the very real concerns that had been expressed to him by several different eyewitnesses made Alissa feel she was being encouraged to deny the allegations. Principal Rollins went so far as to advise her on what her written statement should say, suggesting she write that Oesterle was a positive role model, acting as a father figure to her, and that their relationship was platonic. Alissa was not allowed to return to class until she had completed and signed a statement to Rollins' satisfaction.

26. Principal Rollins' decisions not to proceed with an investigation into reports from Alissa's family and school district officials about Oesterle's misconduct, and to instead direct Alissa to write a statement to the effect that "nothing was going on," were not subject to review by another official or government body. Principal Rollins, SOI's top official and policymaker, displayed deliberate indifference to the actual notice that had been provided him by multiple witnesses, including teachers, coaches, and parents. Principal Rollins' actions on this day, just like his actions in the years and months preceding this day, established a custom and policy whereby Oesterle could sexually groom, stalk, sexually harass, sexually discriminate against, and sexually assault young girls in the Springdale School District.

27.     Ever more confident that Principal Rollins and the Springdale School District were not going to punish him or even try to stop him, Oesterle's abuse of Alissa continued to escalate. He began offering to pay Alissa to have sex with him and to perform oral sex on him. Alissa's refusals, however, meant nothing to him and only seemed to fuel his perverse desires. Between 2017-2018, Oesterle forced Alissa to listen to him describe in graphic detail particular fantasies involving her, including rape fantasies where she was supposed to try to fight him off as he overpowered her, and including fantasies wherein Alissa would engage in a three-way sexual experience with him and another minor female student in the District. Oesterle fantasized that both Alissa and the other minor student would be tied up while he had sex with each of them and then watched while they had sex with each other. He offered Alissa money in exchange for enacting the fantasy, which Alissa refused.

28.     Oesterle preferred to communicate these fantasies to Alissa over Snapchat so that there would be no evidence of the communications. Alissa, uncomfortable with the situation, would often attempt to change the subject of the conversation. He also continued to show up at Alissa's home, even texting her one night that he "loved it when she slept with no clothes on," indicating that he had come to her home in the night and looked through the window of her first-floor bedroom while she was sleeping to discern what she was wearing.

29.     During his sexual harassment and abuse of Alissa, Oesterle threatened to kill Alissa and her family if she ever reported him, warning that, if she reported him, she would be taking away his family, so he would have to do the same to her. He advised her that, even if she did report him, he had people in the Springdale school system who would back him up, so reporting would be futile. Given that the Springdale School District and its officials, including Principal Rollins, had by this point clearly proved to Alissa their utter indifference to her plight, she had

every reason to believe that Oesterle was in fact being protected by the school district and that he was in essence invulnerable to any potential consequences.

30. In December 2018, when sixteen-year-old Alissa had blocked him on social media for being "violently graphic," Oesterle showed up at her job at Barnes & Noble. He approached her and groped her breast in front of other patrons at the store. This behavior was reported to authorities, and Oesterle was eventually charged for his sexual misconduct toward Alissa and other minor females. He pleaded guilty to one count of second-degree sexual assault.

31. Alissa's school performance significantly suffered in the face of Oesterle's and Springdale School District's conduct. Though Alissa had been heavily involved in school and academically successful in her studies prior to meeting Oesterle, Alissa quickly ceased taking part in extracurricular activities, and her grades plummeted. She struggled with motivation, had difficulty focusing in class, and found herself unable to face male instructors. As a result, her school attendance rapidly declined.

32. Alissa's mental health also deteriorated, and she suffered from persistent anxiety. She could not sleep through the night. She started to become so stressed at school that she would faint and have to leave for the day. She even attempted suicide. Alissa twice checked herself into Springwoods Behavioral Health Center. She was diagnosed with post-traumatic stress disorder (PTSD) as a direct result of Oesterle's repeated sexual harassment and abuse, and a disability plan, pursuant to Section 504 of the Rehabilitation Act of 1973, was initiated on her behalf. Alissa was forced to participate in school virtually for the remainder of the school year.

33. Following the years of abuse by Oesterle and the deliberate indifference of Springdale School District, Alissa found she struggled to interact with school administrators in any matter and particularly could not face male administrators. To this day, Alissa still struggles

to interact with male bosses, professors, and superiors. This has had a negative impact on her career opportunities and college prospects, severely limiting her opportunities on both fronts. Alissa attempted to attend college in-person but so significantly struggled to speak with college professors, particularly male professors, that she was forced to attend school online and forgo the advantages of face-to-face learning.

### COUNT I: VIOLATION OF 42 U.S.C. § 1983 BY MARK OESTERLE, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS ASSISTANT PRINCIPAL

34. Plaintiff restates and reincorporates the immediately preceding paragraphs as if set forth verbatim herein.

35. Governmental entities are liable for constitutional violations when execution of their policies deprive an individual of their rights under the U.S. Constitution. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 695 (1978). "It is well-settled that the Due Process Clause of the Fourteenth Amendment protects the liberty interest of a child in public school from sexual abuse." *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 778 (8th Cir. 2001).

36. "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013) (internal citations omitted) (internal quotations omitted). A "single decision by a municipal official can constitute official policy." *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 946 (8th Cir. 2017).

37. At all times relevant, Mark Oesterle, as Assistant Principal of SOI within Springdale School District, was acting as a policymaker. Springdale School District Personnel Policy Book lists a middle school assistant principal's duties to include: "To work with the

principal to develop and implement the program for supervision of students by certified staff" and "To administer district policies and regulations within the school in the absence of the principal." *See Springdale School District Classified Personnel Policy Book 2018-2019*, p. 82, attached and incorporated herein as **Exhibit "B".** At all times relevant, Oesterle, as Assistant Principal of SOI School of Innovation, was a school district official with policymaking authority sufficient to establish school policy or custom by his actions or failures to act. At all times relevant, Oesterle was also subject to Springdale School District's supervision and control and Principal Joseph Rollins' supervision and control.

38. During Alissa Cawood's time as a student at SOI, Mark Oesterle's repeated sexual harassment and sexual assault of Alissa established a custom on the part of Springdale School District that evidenced a deliberate indifference toward Plaintiff's constitutional right to bodily integrity.

39. The custom established by Oesterle permitted Alissa Cawood to be sexually assaulted on at least thirty (30) occasions, including at least fifteen (15) instances occurring on Springdale School District grounds, thereby violating her right to bodily integrity. This custom also permitted Oesterle to groom, stalk, and harass Alissa Cawood with impunity for three (3) years, allowing him to obtain sexual gratification from communicating his sexual desires to an underaged and vulnerable student, to threaten that student, and to convince that student that he was protected by the District and there was nothing she could do about it.

40. As a result of the constitutional deprivations by Mark Oesterle, Alissa Cawood suffered extensive damages, to be described in more detail below.

### COUNT II: 42 U.S.C. § 1983 CLAIM AGAINST JOSEPH ROLLINS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS PRINCIPAL

41. Plaintiff restates and reincorporates the immediately preceding paragraphs as if set forth verbatim herein.

42. Governmental entities are liable for constitutional violations when execution of their policies deprive an individual of their rights under the U.S. Constitution. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 695 (1978). "It is well-settled that the Due Process Clause of the Fourteenth Amendment protects the liberty interest of a child in public school from sexual abuse." *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 778 (8th Cir. 2001).

43. "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013) (internal citations omitted) (internal quotations omitted). A "single decision by a municipal official can constitute official policy." *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 946 (8th Cir. 2017).

44. One acts as a "policymaker" when he or she "speak[s] with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *See McMillian v. Monroe County, Ala.*, 520 U.S. 781, 784-85 (1997).

45. At all times relevant, Joesph Rollins, as Principal of SOI within Springdale School District, was acting as a policymaker. Springdale School District Personnel Policy Book lists a middle school principal's duties to include: "Assumes responsibility for the implementation and observance of all Board policies and regulations by the school's staff and students." *See* **Exhibit B**, pp. 52-53.

46. Principal Rollins' decisions (1) not to proceed with an investigation into reports from Alissa's family and school district officials regarding Oesterle's misconduct, (2) to dictate to Alissa that he "knew nothing was going on," (3) to direct Alissa to write a statement to the effect that "nothing was going on," and (4) to deem the matter closed and take no further action to protect Alissa or control Oesterle despite significant and obvious evidence that Alissa and other young girls were at risk, were not subject to review by another official or government body and constituted final policymaking for Springdale School District.

47. At all times relevant, Rollins, as Principal of SOI School of Innovation, was a school district official with policymaking authority sufficient to establish school policy or custom by his very actions or failures to act.

48. During Alissa Cawood's time as a student at SOI, Joseph Rollins' repeated practice of failing to adequately investigate and ultimately ignoring all reports regarding inappropriate behavior of a faculty member toward a student established a custom on the part of Springdale School District that evidenced a deliberate indifference toward Plaintiff's constitutional right to bodily integrity. His affirmative efforts to encourage that Alissa Cawood deny any allegations of abuse by Oesterle and document this denial for his own protection, rather than investigating same, further evidenced this indifference.

49. The custom established by Joseph Rollins permitted Oesterle to sexually assault Alissa Cawood on at least thirty (30) occasions, thereby violating her right to bodily integrity.

50. As a result of the constitutional deprivations by Joseph Rollins, Alissa Cawood suffered extensive damages, to be described in more detail below.

**COUNT III: VIOLATIONS OF TITLE IX BY SPRINGDALE SCHOOL DISTRICT**

51. Plaintiff restates and reincorporates the immediately preceding paragraphs as if set forth verbatim herein.

52. Title IX applies to all public and private educational institutions that receive federal funds. The statute prohibits discrimination based on sex in a school's "education program or activity," which includes all of the school's operations. 20 U.S.C. §§ 168l(a), 1687. A school specifically agrees, as a condition of receiving federal funds, to operate all of its programs and activities in compliance with Title IX and the Department of Education's Title IX regulations. This agreement is known as an "assurance of compliance." 34 C.F.R. § 106.4(a)-(C).

53. Sexual harassment is a form of sex discrimination prohibited by Title IX. Sexual harassment is defined for Title IX purposes as unwelcome conduct of a sexual nature, including sexual assault. *See* 34 C.F.R. § 106.30.

54. A school also has an obligation under Title IX to make sure that all employees involved have "adequate training as to what conduct constitutes sexual harassment." Upon information and belief, Springdale School District chose to ignore this obligation.

55. Springdale School District was deliberately indifferent to known acts of sexual discrimination by Mark Oesterle against Alissa Cawood, of which it had actual knowledge, and which largely occurred under the school district's control – on the physical grounds of the educational institution and while Oesterle was employed by the school district. Springdale School District's deliberate indifference made Alissa vulnerable to the sexual discrimination and abuse she suffered and thereby caused it.

56. Principal Joseph Rollins had actual knowledge of Mark Oesterle's inappropriate relationship with Alissa and had the power to end the relationship before it escalated to sexual assault and deprived Alissa Cawood of her educational benefits. Rollins, as principal, was an

appropriate person to receive notice of sexual discrimination. He had actual knowledge that Oesterle was treating Alissa differently based on her sex. In doing nothing, and even encouraging Alissa, a minor, to draft a letter to the contrary despite significant evidence that she was being victimized, and without providing any notification to her guardians, Rollins displayed deliberate indifference.

57. Springdale School District's deliberate indifference to Alissa's sexual discrimination is further evidenced by its decision to require that Alissa, a minor, write a letter stating that she is not experiencing discrimination rather than investigate the numerous reports to the contrary.

58. Springdale School District, at all relevant times, exercised substantial control over both the harasser and the context in which the known harassment occurred.

59. At all relevant times, Springdale School District's deliberate indifference directly caused the discrimination to occur and made Alissa vulnerable to the discrimination.

60. Springdale School District failed to promptly and properly investigate the reports of discrimination, thereby creating a hostile educational environment which effectively denied Alissa access to the educational opportunity and benefit to which she was entitled.

61. The sexual discrimination, including the acts of sexual abuse, created a hostile educational environment which effectively denied Alissa the educational opportunities and benefits to which she was entitled.

62. The sexual discrimination was so severe, pervasive, and objectively offensive that it prevented Alissa from access to educational opportunity and benefit.

## DAMAGES

63. Plaintiff restates and reincorporates the immediately preceding paragraphs as if set forth verbatim herein.

64. The injuries and damages sustained by Alissa Cawood were produced as a probable consequence from the deprivations of Plaintiff's constitutional rights by Mark Oesterle and Joseph Rollins and the violations of Title IX by Springdale School District.

65. The injuries and damages sustained by Alissa Cawood include, but are not limited to:

   a. Emotional suffering and mental anguish, including shame, humiliation and loss of self-worth, experienced thus far and continuing well into the future;

   b. Medical expenses incurred in the past and continuing into the future for physical ailments, counseling and therapy, and transportation expenses to obtain such treatment;

   c. Loss of educational benefits and opportunities, as well as the future effects of such;

   d. Loss of employment opportunities and lost wages; and

   e. Any other damages made available under Title IX or § 1983.

66. Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff prays that the Defendants be ordered to appear and answer the Complaint herein; that upon final trial of this action Plaintiff be granted judgment against Defendants for her damages, in an amount in excess of that required for diversity jurisdiction, that Plaintiff recovers costs of suit herein expended and interest and the legal rate on all of the above, and that Plaintiff be awarded such other and further relief, both at law and equity, to which the Court, in its discretion, may find her to be justly entitled.

Respectfully submitted,

ALISSA CAWOOD, PLAINTIFF

By: Alan L. Lane, Ark. Bar No. 2003131
Hannah L. Hungate, Ark. Bar No. 2021161
ODOM LAW FIRM, P.A.
161 W. Van Asche Loop, Suite 1
Fayetteville, AR 72703
(479) 442-7575
(479) 442-9008 *fax*
alane@odomfirm.com
hhungate@odomfirm.com

and

Joshua D. Gillispie, Ark. Bar No. 2010131
GREEN & GILLISPIE
1 Riverfront Place, Ste. 605
North Little Rock, AR 72114
(501) 244-0700
(501) 244-2020 *fax*
josh@greenandgillispie.com

_____
Joshua D. Gillispie

ATTORNEYS FOR PLAINTIFF